IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEMETRIUS E. COLEMAN, | Case No. 1:17-cv-00560 |
| Petitioner, | JUDGE JAMES G. CARR |
| v. | MAGISTRATE JUDGE THOMAS M. PARKER |
| DAVID MARQUIS, Warden, | |
| Respondent. | **REPORT & RECOMMENDATION** |

**I.     Introduction**

Petitioner, Demetrius E. Coleman, seeks a writ of habeas corpus under 28 U.S.C. § 2254, claiming that his conviction and sentence in *State v. Coleman*, Case No. CR-14-590438-B, (Cuyahoga County, Ohio Court of Common Pleas), as affirmed in *State v. Coleman* 2016-Ohio-297, 2016 Ohio App. LEXIS 263 (Ohio Eighth Dist. App., January 28, 2016) violated his constitutional rights.  ECF Doc. No. 1.  Respondent Warden, David Marquis, has filed a return of writ.  ECF Doc. 6.  Coleman has filed a traverse.  ECF Doc. 7.

The matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Coleman's petition or other case-dispositive motions.  Because all of Coleman's claim lacks merit, I recommend that the Court DENY and DISMISS the petition.

## II. Procedural History

### A. State Trial Court Conviction

A Cuyahoga County, Ohio grand jury issued a three-count indictment against Coleman on October 28, 2014 charging him with: Count One – Aggravated Burglary, in violation of Ohio Rev. Code. §2911.11(A)(2), a first-degree felony; Count Two – Grand Theft, in violation of Ohio Rev. Code § 2913.02(A)(1), a third-degree felony, (each of the first two counts also had one-year firearm specifications under Ohio Rev. Code § 2941.141(A)); and Count Three – Tampering with Evidence in violation of Ohio Rev. Code § 2921.12(A)(1), a third-degree felony. ECF Doc. 6-1, Ex. 1, Page ID#31. Coleman pleaded not guilty to the charges and proceeded to jury trial commencing on February 17, 2015. ECF Doc. 6-1, Page ID# 135.

On February 19, 2015 Coleman was found guilty of each of the three counts and guilty of the firearm specification attached to Count Two, but not guilty of the firearm specification attached to Count One. ECF Doc. 6-1, Ex. 12, Page ID# 437.

The trial court conducted a sentencing hearing on April 7, 2015. Coleman was ordered to serve a prison term of ten years on the Count One Aggravated Burglary charge, twelve months on the Count Two Grand Theft charge, one year on the firearm specification attached to Count Two, and twelve months on the Count Three evidence tampering charge. The prison terms on Counts One, Two, and the firearm specification were ordered to be served consecutively; the prison term on the evidence tampering charge was to be served concurrently to the other counts. The aggregate sentence was twelve years. *Id.* at Page ID#636-637. The conviction and sentences were journalized on April 8, 2015. ECF Doc. 6-1, Ex. 2, Page ID# 33-34.

### B. Direct Appeal

Coleman, represented by new counsel, filed a timely notice of appeal to the Ohio Court of Appeals on April 28, 2015. He raised three assignments of error:

1. The trial court erred in denying Defendant's motion for dismissal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure where the evidence presented was insufficient as a matter of law to support his conviction for aggravated burglary.

2. Defendant's convictions for aggravated burglary, grand theft, and tampering with evidence were against the manifest weight of evidence.

3. The trial court erred by failing to make the requisite findings under R.C. 2929.14(C)(4) for the imposition of consecutive sentences.

ECF Doc. 6-1, Ex. 4, Page ID# 39-40. The state filed a brief opposing Coleman's arguments. *Id.* at Ex 5, Page ID# 58. In a January 28, 2016 journal entry and opinion, the Ohio Court of Appeals: (1) overruled Coleman's first and second assignments of error, thereby affirming his convictions; (2) sustained Coleman's third assignment of error, reversing the trial court's imposition of consecutive sentences without the requisite statutory findings; and (3) remanded the matter for further proceedings. ECF Doc. 6-1, Ex. 6, Page ID# 84-97.

Coleman, *pro se*, filed a timely notice of appeal and memorandum in support of jurisdiction in the Ohio Supreme Court on March 9, 2016. ECF Doc. 6-1, Exs. 7, 8, Page ID# 98, 100. Coleman raised two propositions of law:

1. The appellate court erred in finding that the essential elements of aggravated burglary were proven beyond a reasonable doubt.

2. The appellate court erred in finding that Coleman's convictions for aggravated burglary and grand theft were not against the manifest weight of evidence.

ECF Doc. 6-1, Ex. 8, Page ID# 101. The State filed waiver of its right to file a responsive memorandum. ECF Doc. 6-1, Ex. 9, Page ID# 127. The Ohio Supreme Court declined jurisdiction on May 18, 2016. ECF Doc. 6-1, Ex. 10, Page ID# 128. Coleman did not seek further review in the United States Supreme Court. ECF Doc. 1, Page ID# 2.

### C.    Resentencing

Pursuant to the Ohio Court of Appeals mandate, Coleman returned to the trial court for resentencing on August 9, 2016. The trial court imposed the same prison sanctions that were imposed at the original sentencing hearing. ECF Doc. 6-1, Ex. 11, Page ID# 129. Coleman did not appeal the re-sentencing decision.

### D.    Federal Habeas Corpus Petition

Applying the prison mailbox rule[1], Coleman filed his *pro se* petition for writ of habeas corpus in this court on June 10, 2017. ECF Doc. 1. Coleman's single ground for relief asserts: **GROUND ONE:** There was insufficient evidence to support Petitioner's conviction for aggravated burglary, in violation of his Due Process rights under the U.S. Constitution. ECF Doc. 1, Page ID# 21.

## III.    The Facts

The court begins by reciting the facts as they were set out in the Ohio Court of Appeals opinion:

> {¶ 3}   At trial, testimony and evidence were presented as to events that occurred on October 16, 2014. The state presented testimony from several police officers involved in the matter.
>
> {¶ 4}   According to the testimony presented, the victim, Officer Kevin Berry, a Cleveland police officer, went to work in the morning, but returned home around 1:15 p.m. to pick up something he had forgotten. He was in a patrol car. When he arrived at his house, he found a vehicle parked in his driveway with the engine running. Codefendant Shamblin

---

[1] *Houston v. Lack*, 487 U.S. 266, 270 (1988).

was in the driver's seat. When Berry asked Shamblin what she was doing there, she responded that she was there to "pick up her nephew." Berry became suspicious. He took the keys from Shamblin and went up his driveway to check the house.

{¶ 5} Berry discovered a window was broken and saw a television set lying in the backyard. He then returned to Shamblin's vehicle, handcuffed her to the steering wheel, called for backup, and went to check inside his house. He noticed the basement light had been turned on. Berry announced his presence and yelled "come out with your hands up." Berry glanced toward his kitchen and noticed various items were scattered around the floor. After making several announcements for any suspects to come out with their hands up, Berry retreated from the home because he knew he had a weapon in the home and was concerned for his safety.
{¶ 6} After backup assistance arrived, the police checked the house. Several items, including a revolver, ammunition, and a ballistic vest, were missing. Nobody was found inside, and a search of the neighborhood for suspects commenced. A short time later, Coleman was spotted running from the end of the street. He was then caught and apprehended. Cuts were observed on his hands. Coleman indicated his phone was in Shamblin's vehicle.

{¶ 7} Berry asked Coleman for the location of his missing gun. After asking for a favor, Coleman directed the officers to the location of Berry's gun and other belongings, which was behind a garage that was about a quarter mile from Berry's home.

{¶ 8} Codefendant Shamblin also testified in the matter. She testified that Coleman was unknown to her prior to the date of this incident. She stated she was contacted by a friend and asked to give Coleman a ride. Shamblin picked up Coleman in front of a Kmart at 1:09 p.m. As she was driving, Coleman told her to turn down a nearby side street and directed her to a driveway. Shamblin testified that Coleman told her he would be right back and went to the back of the house. Officer Berry then knocked on the vehicle's window.

{¶ 9} Shamblin conceded that Coleman left his cell phone in the vehicle. She also testified that the vehicle was an SUV that belonged to a friend whose house she was at prior to picking up Coleman. She stated that she left her vehicle, which was a Chrysler, at her friend's house, and taken the SUV, which had more room in the back.

{¶ 10} The trial court denied Coleman's Crim.R. 29 motion for acquittal. The jury returned a verdict of guilty of aggravated burglary, grand theft, and tampering with evidence. The jury found appellant not guilty of the firearm specification under Count 1, but guilty of the one-year firearm

> specification under Count 2. The court ordered consecutive sentences for Counts 1 and 2, and a concurrent sentence for Count 3, and imposed a total aggregate prison term of 12 years.

*State v. Coleman* 2016-Ohio-297, 2016 Ohio App. LEXIS 263 (Ohio Eighth Dist. App., January 28, 2016).

In a habeas corpus proceeding, factual determinations made by state courts are presumed correct unless the petitioner rebuts them by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see also *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).

## IV. Legal Standards

### A. AEDPA

A state habeas prisoner's claims for habeas corpus relief are governed by the Antiterrorism and Effective Death Penalty Act, *Pub.L. 104-132, 110 Stat. 1214* (AEDPA), which amended the habeas corpus statute by including a standard of review that gives significant deference to the decisions made by the state courts on the constitutional issues raised in a habeas corpus petition.[2] *See Penry v. Johnson*, 532 U.S. 782, 791, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir.2008). AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279,(2002) (per curiam).

---

[2] Petitions for habeas corpus relief under AEDPA are governed by the statute of limitations set forth in 28 U.S.C. § 2254. A review of Coleman's state court record reveals his petition was timely filed. Because Warden Marquis raises no timeliness issue, I find it unnecessary to set forth a statute of limitations analysis in this report.

When the claim presented in a habeas corpus petition has been presented to and decided by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In applying this statute, the Supreme Court has held that "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 565 U.S. 23, 24, 132 S. Ct. 26, 181 L. Ed. 2d 328 (2011), quoting *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. at 102-103 (quoting *Jackson v. Virginia*, 443 U.S. 307,

332, n. 50, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

**B.    Merits Review – Sufficiency of Evidence**

The Due Process Clause of the Fourteenth Amendment requires a state to prove every element of a crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979). A habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). "[T]he Jackson inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

Because both *Jackson* and AEDPA apply to a petitioner's sufficiency claim, federal habeas review requires deference at two levels. "'First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). The Sixth Circuit has explained:

> When reviewing whether the state court's determination was "objectively unreasonable," this court necessarily engages in a two-step analysis. First, we must ask whether the evidence itself was sufficient to convict under *Jackson*. The inquiry ends if the panel determines that there was sufficient evidence to convict [the petitioner]. If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010). The Sixth Circuit has observed that "'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

**V.     Discussion**

The starting point of the court's analysis is the state court of appeals decision. Under AEDPA, it is that decision which must be analyzed to determine whether it was contrary to, or an unreasonable application of, clearly established federal law. For the following reasons, the court cannot make that conclusion.

The first thing to examine is the Ohio Court of Appeals' analysis of the evidence in conjunction with the elements of the aggravated burglary charge. The court said:

> {¶ 13} Coleman was convicted of aggravated burglary under *R.C. 2911.11(A)(2)*, which provides:
>
>> No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender has a deadly weapon or dangerous ordinance on or about the offender's person or under the offender's control.
>
> {¶ 14} Coleman argues that there was insufficient evidence to support his conviction for aggravated burglary. More specifically, he claims the state failed to produce sufficient evidence that anyone was "present or likely to

9

be present" at the time of the offense. We recognize that Coleman relies upon a former version of the statute and that the current version requires that "another person other than an accomplice of the offender is present[.]"

{¶ 15} It has been held that "the element: 'while another person is present' in *R.C. 2911.11(A)* is sufficiently established if the state demonstrates the presence of the person inside the structure is associated in time with the entry, or the entry and the presence of the person inside are part of one continuous occurrence." *State v. Ramirez*, 12th Dist. Clermont No. CA2004-06-046, 2005-Ohio-2662, ¶ 26.

{¶ 16} The evidence in this case was sufficient to establish that Berry arrived at his home, which was an occupied structure, while the burglary was in progress. When Berry arrived, a vehicle was in the driveway with the engine still running. Shamblin testified that Coleman had gone to the back of the house, that he left his cell phone in the vehicle, that he stated he would be right back, that it had been only a couple of minutes, and that she was waiting for Coleman. Upon walking up the driveway, Berry observed his television lying on the back lawn and noticed a broken window. After handcuffing Shamblin to the steering wheel and calling for backup, he entered the home and announced his presence. He observed a light on in the basement and belongings scattered on the kitchen floor. He retreated to wait for backup because of a concern for his safety because he kept a loaded gun in the home. The state produced sufficient evidence that Berry was present at the time of the offense.

{¶ 17} Viewing the evidence in a light most favorable to the state, we find that any rational trier of fact could have found the essential elements of aggravated burglary were proven beyond a reasonable doubt. Coleman's first assignment of error is overruled.

The Ohio Court of Appeals applied the evidence sufficiency standard of *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991)*,* which is the Ohio analogue to *Jackson v. Virginia*. Thus, the correct legal standard was identified and applied. The Ohio Court of Appeals determined, as a matter of law, that after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the aggravated burglary to have been proven beyond a reasonable doubt. It is this conclusion to which AEDPA deference must be applied.

Coleman argues that there was simply no evidence that anyone was burglarizing Kevin Berry's house at the time Berry arrived there. He points out that the house was immediately searched, and no one was found inside. To that, he adds that there was also no evidence that Coleman was ever actually inside the residence or that he had a deadly weapon on his person. Without this, he argues, the state did not produced evidence on the element of the crime requiring that someone other than an accomplice of the defendant be present during the trespass. And he is now contending that the state produced no evidence that the burglar had a deadly weapon or dangerous ordinance on or about his person or under his control. Coleman concedes someone broke into Berry's house sometime that day, but there was no evidence that Coleman himself ever entered the residence. ECF Doc. 7, Page ID# 643-644.

As the court of appeals pointed out, there was evidence that Coleman's co-defendant, Jennifer Shamblin, was sitting in an idling car in Berry's driveway when Berry came home. There was evidence that Coleman's cell phone was in the car and that he had told Shamblin he would be right back after he'd left the vehicle a couple of minutes before Berry arrived. There was evidence that Coleman walked up the driveway and disappeared behind the house, where Berry found a broken window and his flat screen TV sitting on the lawn. There was evidence that Coleman, after he was apprehended by the police, led the police to a place where a bag of Berry's property, including his .357 revolver, were hidden.

From these facts, a rational jury could have concluded that Berry came upon a burglary in progress. The jury could have inferred that after Berry walked up to the back of the house and saw a broken window and his TV on the lawn, the burglar became aware

11

someone was there and made a quick exit during the time when Berry returned to Shamblin's vehicles and handcuffed her to the steering wheel. Or the jury could have inferred that after Berry yelled into the home "Cleveland Police. Come out with your hands up" the burglar was alerted and made his exit when Berry retreated to wait for backup. The jury could have inferred that the burglar, now on the outside of the house, ran away through the back yard. The jury could have inferred Coleman was the burglar from: his presence at the property; the fact he walked to the back of the house where a window was broken; the fact that he had cuts on his hands, which could have come from the broken glass; the fact he ran up W. 150th Street after he did a quick peek down Schuyler Road and saw police cars at Berry's house; the fact that he led police to Berry's missing property within minutes after having been stopped by the police. And the jury could have inferred that Coleman had a deadly weapon on or about his person or under his control when he took possession of Berry's revolver while burglarizing the home.

     From this record, it is evident there was sufficient evidence for the jury to conclude that Coleman was guilty of aggravated burglary. The jury so found, and we are required to give deference to the jury's resolution of the factual issues they examined. The jury made the curious decision to find Coleman not guilty of the firearm specification attached to the aggravated burglary charge but guilty of aggravated burglary, an offense that required evidence of a deadly weapon on or about the person of the trespasser or under his control. Because these two conclusions seem inconsistent, it might be argued that the burglary finding is suspect. However, Coleman never advanced this argument in state court or in his habeas filings. Significantly, it might have been the opposite conclusion, that the jury's finding on the gun specification was faulty. In either

12

case, we must defer to what the jury actually found. The fact that a different jury or even this court might have reached a different conclusion, one favorable to Coleman, is of no moment. We have no basis to conclude that the proceedings in state court resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Further, there is no basis upon which this court could conclude that the court of appeals' affirmance of Coleman's conviction was contrary to, or involved an unreasonable application of *Jackson v. Virginia*, the applicable clearly-established federal law.

Because Coleman's Ground One claim lacks merit, I recommend that the court DISMISS the claim and DENY Coleman's petition for a writ of habeas corpus.

## VI. Recommendation Regarding Certificate of Appealability

### A. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the

13

questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a). In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. Analysis

The resolution of the Coleman's sole ground for relief on the ground that it lacks merit cannot reasonably be debated. Thus, I recommend that a certificate of appealability be denied.

## VI.  Recommendations

Because Coleman's sole ground for relief lacks merit, I recommend that the court deny his petition for a writ of habeas corpus under 28 U.S.C. § 2254.  I further recommend that Coleman not be granted a certificate of appealability.

Dated: January 18, 2019

Thomas M. Parker
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).